## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | | |
|---|---|---|
| **KATHY HILL and CECIL HILL** | * | |
| *Plaintiffs*, | * | |
| v. | * | **Civil Action: 1:14-cv-1566** |
| **EXPERIAN INFORMATION** | * | |
| **SOLUTIONS, INC.** | | |
| **505 City Pkwy West** | * | |
| **Orange, CA 92668** | | |
| | * | |
| **Serve on:** | | |
| | * | |
| **The Corporation Trust** | | |
| **Incorporated** | * | |
| **351 West Camden St.** | | |
| **Baltimore, MD 21201,** | * | |
| | | |
| *Defendant.* | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Kathy Hill and Cecil Hill, by their undersigned counsel and for their complaint against the Defendant, allege as follows:

### INTRODUCTION

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service

or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

2.     Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can sustain substantial harm, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     These CRAs sell to readily paying subscribers (*i.e.*, retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6.      Requiring CRAs to assure the "maximum possible accuracy" of consumer information is crucial to the stability of our banking system, *to wit*:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. *We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8.      To further the primary goal of greater accuracy, the FCRA also requires CRAs, as well as "furnishers" of credit information to the CRAs, among many other duties, to conduct "reasonable investigations" into disputes lodged to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their

3

credit reports, to correct or update any such errors or omissions, and to report back to the consumers the results of their investigations.

9.      This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiffs, Kathy and Cecil Hill ("Plaintiffs" or "the Hills"), against Defendant, Experian Information Solutions, Inc. ("Experian"), for its willful and/or negligent violations of the Fair Credit Reporting Act, as described herein.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1681$p$ and 28 U.S.C. § 1337. Venue in this judicial district is proper as Plaintiffs reside in this district, Defendant conducts business in this district, and many of the facts relevant to this Complaint occurred in this district.

## PARTIES

11.      The Hills are adult individuals who are and were, at all times relevant hereto, married residents of Havre de Grace, Maryland. Plaintiffs are "consumers" as defined by Section 1681$a$(c) of the FCRA.

12.      Experian is an Ohio corporation doing business throughout the United States and in the State of Maryland. Experian is a "consumer reporting agency" as defined by Section 1681$a$(f) of the FCRA, and is one of the largest CRAs in the world.

## **FACTUAL ALLEGATIONS**

13.     In August 2003, the Hills were the unfortunate victims of theft. Near their home in Havre de Grace, Maryland, Mrs. Hill's purse was stolen from the front seat of her car. Mrs. Hills purse contained, among other things, Mrs. Hill's credit cards and Medicare card, which upon information and belief, contained her Social Security Number.

14.     The Hills immediately reported the theft to the local police.

15.     Unfortunately, Mrs. Hill's credit card(s) was used to make one or more fraudulent purchase. The Hills disputed the fraudulent charge(s) with their credit card company(s).

16.     Through an abundance of caution, the Hills also contacted each of the three (3) national CRAs, Experian included, to report the fraud and to request copies of Mrs. Hill's credit report.

17.     The Hills hoped, and cautiously believed, that they had successfully thwarted any significant harm from being done to their excellent credit standing.

18.     Over the next several years, the Hills had no issues related to their excellent credit standing or the theft of Mrs. Hill's purse in 2003.

19.     However, in the summer of 2009, the Hills' daughter (who resides in Pennsylvania) received a collection call from an entity inquiring about a Progress

Energy customer named "Kathy Hill" who allegedly owed a utility bill totaling $1,183.32.

20.     Upon information and belief, the Hills' daughter received a number of these calls over a several month period, resulting in the Hills' daughter contacting them to inquire as to what was going on.

21.     In or around November 2009, Mrs. Hill called Progress Energy directly. She notified the utility company that she had never owned or resided at the address in question, 10850 Piping Rock, Orlando, Florida, so she could not have accumulated the charges.

22.     In or around April 2010, Mrs. Hill sent a formal written dispute letter to Progress Energy stating that the she did not accumulate or owe the charges that Progress Energy was seeking.

23.     In or around November 2011, the Hills requested credit reports from the three (3) national CRAs again, Experian included.

24.     Fearing that an identity thief may be responsible for the unexplained Progress Energy account, Mrs. Hill also requested that a security alert be placed on her respective credit reports, Experian included.

25.     Upon receipt and review of her November 2, 2011, Experian credit report, Mrs. Hill discovered an account in collections from an entity called Online Collections which, upon information and belief, is the collection agency collecting the debt

originally owed to Progress Energy. Mrs. Hill's November 2, 2011, Experian credit report also contained the 10850 Piping Rock, Orlando, Florida address – an address at which the Hills have never resided.

26.    Mrs. Hill disputed with Experian the appearance of the false information in her November 2, 2011, Experian credit report.

27.    On or around November 10, 2011, Experian responded to the Hills' with a new credit report that confirmed receipt of Mrs. Hill's dispute and indicating that Experian's investigation of same was "still pending" with an estimated date of completion as November 28, 2011. Thus, even though the attached credit report still showed the Online Collections information and false address, the Hills trusted and believed that Experian would delete them.

28.    Upon information and belief, the Hills did not receive any additional communication from Experian about Mrs. Hill's November 2011 dispute.

29.    In April 2012, the Hills contacted Experian again requesting a copy of Mrs. Hills credit report to see the current status.

30.    Upon receipt and review of Mrs. Hill's April 18, 2012, Experian credit report, the Hills discovered that both the false and highly negative Online Collections information as well as the 10850 Piping Rock, Orlando, Florida address was still there.

31.    Confused and frustrated, yet determined to set the record straight, the Hills sent another dispute letter to Experian on or around May 2, 2012.

32.   Again, the Hills trusted and believed that Experian would do what was necessary to correct its false and damaging records.

33.   On or around May 18, 2012, the Hills received Experian's reinvestigation results. To the Hills' surprise and dismay, Experian advised that it had previously investigated the disputed information and so, would not do so again. In other words, irrespective of whether or not Experian made a mistake with respect to its original investigation, and with seemingly no concern whatsoever over whether the disputed information was, in fact, false, Experian refused to investigate Mrs. Hill's second dispute.

34.   Experian further advised that, even though the FCRA places "grave responsibilities" on Experian to assure the maximum possible accuracy of the information it reports about consumers, the burden would now fall on the Hills to clear their good name. Specifically, Experian informed the Hills that if they disagreed with Experian's determination, the Hills could contact the credit grantor directly.

35.   Notably, at no point did Experian inform the Hills that Experian determined their dispute was frivolous or irrelevant. Instead, Experian admits that it refused to conduct *any* sort of investigation simply because the Hills had previously disputed the same information.

36.     The Hills were frustrated, concerned and disgusted by Experian's response. Experian had made clear that if the Hills wanted to clear their good name, it would be up to them with no help from Experian.

37.     With little choice in the matter, the Hills proceeded to do whatever they could to convince Online Collections and/or Progress Energy that some mistake or fraud had occurred, and the reporting of the collections information about the Hills was erroneous.

38.     The Hills ultimately succeeded in their efforts. On or around August 20, 2012, Online Collections notified the Hills that it was canceling the account in dispute and would ask Experian to remove the false account from Mrs. Hills' credit file.

39.     While the Hills were thankful and relieved that they had been able to convince Online Collections of the mistake and/or fraud, and that Online Collections represented it would contact Experian to have the information removed from Mrs. Hill's credit report, the Hills were still angered and disgusted that it was only through their *own* efforts that Mrs. Hill's Experian credit report would be accurate.

40.     Had Experian conducted a reasonable investigation in the first place, or had Experian not refused to investigate its own erroneous conclusion upon the Hills' request in May 2012, the Hills' excellent credit standing would have been restored much sooner than it was.

41.    During the months for which Experian allowed the false and highly derogatory collection information to remain in Mrs. Hill's credit file because it simply refused to investigate a second dispute, the Hills sought credit on at least two (2) occasions which was negatively impacted by the inaccuracy.

42.    The Hills suffered embarrassment and humiliation having to explain themselves to prospective creditors about derogatory collection information that never should have been reported by Experian in the first place.

43.    To be certain that the subject information was actually deleted, the Hills contacted Experian in December 2012, providing a copy of the August 2012 letter from Online Collections.

44.    Upon receipt and review of Mrs. Hill's December 28, 2012, Experian credit report, the Hills were pleased to confirm that the Online Collections information was gone. However, the 10850 Piping Rock, Orlando, Florida address – an address Experian knows is associated with a now-deleted false and possibly fraudulent account – remains.

45.    The Hills, and Mrs. Hill in particular, are anxious about what the continued link to the possible fraud means for their continued good name and credit rating.

## GROUNDS FOR RELIEF
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

46.     Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

47.     A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681*a*(f).

48.     Experian is consumer reporting agency as defined by Section 1681*a*(f) of the FCRA.

49.     Section 1681*n* of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n*(a). Any person who willfully fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, statutory damages, punitive damages, costs of the action, and reasonable attorneys' fees. *Id*. at § 1681*n*(a)(l)-(3).

50.     Section 1681*o* of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act. See 15 U.S.C. § 1681*o*. Any person who negligently fails to comply with any requirement

of the FCRA is liable to the consumer for actual damages, costs of the action, and reasonable attorneys' fees. *Id*. at § 1681*o*(a)(l)-(2).

### (Failure To Adopt and/or Follow Reasonable Procedures)

51.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681*e*(b).

52.    When Experian receives a dispute from a consumer, its "investigation" procedure involves little more than condensing the consumer's dispute to a two-digit code that gets transmitted electronically to the furnisher of the disputed information for comparison with the furnisher's own information.

53.    Upon information and belief, Experian does no independent or further "investigation" of the substance of the consumer's dispute.

54.    This method of investigation is known as "parroting" of information, and has been rejected routinely by courts throughout the country.

55.    Making matters worse, Experian has a policy and/or procedure not to investigate a dispute lodged by a consumer if the subject of the dispute has been "investigated" by Experian previously. In other words, upon receipt of a consumer's dispute, Experian's first step is to check whether the subject of the dispute has previously been "investigated" by Experian, *i.e.*, whether a two-digit code has previously

been sent to the furnisher of the information to check whether the data matches. If it has, Experian refuses to do any sort of investigation into the consumer's dispute whatsoever.

56.     Upon information and belief, a procedure aimed at the expeditious elimination of work for Experian instead of the accuracy of the underlying information is patently unreasonable.

57.     Moreover, the FCRA envisions the investigation process to involve both the CRA **and** the furnisher of the information. With two (2) separate entities involved, both of whom have distinct responsibilities to conduct a reasonable investigation, *see* 15 U.S.C. §1681*i* and § 1681*s-2b*, the consumer has greater protection that inaccurate information will be corrected as quickly as possible.

58.     Because of Experian's repeat dispute procedure, the consumer loses that protection. Experian unilaterally determines that the furnisher of the disputed information will not even been contacted to conduct its own investigation.

59.     While the FCRA allows a consumer to pursue a cause of action against a furnisher who fails to conduct a reasonable investigation of a consumer's dispute, the furnisher **must** receive notification from the CRA, not the consumer, as a pre-requisite to the cause of action. *See* 15 U.S.C. § 1681*s-2b*.

60.     By refusing to conduct any investigation into Mrs. Hill's second dispute, Experian did not forward anything to Online Collections in May 2012 thereby

13

eliminating any possible claims against Online Collections if the false information was again, wrongly verified as correct.

61.     As described above, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information it circulated about Mrs. Hill.

62.     As a direct and proximate result of Experian's failures, Plaintiff have suffered economic and non-economic loss in specific amounts to be proved at trial.

63.     As a direct and proximate result of Experian's failures, Plaintiffs have suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as themselves.

64.     As a direct and proximate result of Experian's willful and/or negligent refusal to adopt and/or follow reasonable procedures as mandated by the FCRA, Plaintiffs have suffered loss and damage including, but not limited to, financial loss, lost credit opportunity, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

65.     Experian's continued refusal to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiffs. The injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and willful and

wanton misconduct entitling Plaintiffs to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*(a)(2).

### (Failure to Conduct Reasonable Reinvestigations)

66. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

67. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

68. The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." See 15 U.S.C. § 1681*i*(a)(3)(A). However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination." *See* 15 U.S.C. § 1681*i*(a)(3)(B).

69.    In or around November 2011, Mrs. Hill lodged a written dispute with Experian as to the Online Collections account and the Orlando, Florida address.

70.    Despite the fact that the dispute information was false, Experian failed to correct its records accordingly.

71.    The Hills are not seeking a remedy for Experian's failure in this regard.

72.    On or around May 2, 2012, the Hills once again provided a written dispute to Experian advising that the Online Collections account and the Orlando, Florida address information did not belong to Mrs. Hill.

73.    Experian willfully and/negligently failed to conduct **any** investigation, let alone a reasonable investigation, of Mrs. Hill's May 2, 2012, dispute in violation of 15 U.S.C. § 1681*i*(a)(1).

74.    Upon information and belief, at no point in its May 2012, review of Mrs. Hill's dispute did Experian make a determination that the dispute was frivolous or irrelevant.

75.    Experian certainly did not advise the Hills that that Mrs. Hill's dispute had been determined by Experian to be frivolous or irrelevant as expressly required by 15 U.S.C. § 1681*i*(a)(3)(B).

76.    As a direct and proximate result of Experian's refusal to conduct a reasonable investigation, Plaintiffs have suffered economic and noneconomic loss.

77.    As a direct and proximate result of Experian's refusal, Plaintiffs have suffered considerable mental, emotional and physical stress and distress.

78.    As a direct and proximate result of Experian's disregard for Plaintiffs' disputes and the importance of the Hills' good name and credit rating, Plaintiffs have suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as themselves

79.    As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA and as outlined above, Plaintiffs have suffered other loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

80.    Experian's continued refusal to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiffs. The injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiffs to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE**, Plaintiffs, Kathy and Cecil Hill, pray for judgment in their favor and against Defendant, Experian Information Solutions, Inc., and for the following relief:

A.    Actual damages in such amounts as determined by the jury;

B.    Statutory damages, pursuant to 15 U.S.C. § 1681$n$;

C.    Punitive damages, pursuant to 15 U.S.C. § 1681$n$;

D.    Costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1681$n$ and 15 U.S.C. § 1681$o$; and

E.    Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable in this lawsuit.

Dated this 12th day of May, 2014.          Respectfully Submitted,


/s/ E. David Hoskins
E. David Hoskins, Esq. , No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
dhoskins@hoskinslaw.com


/s/ Max F. Brauer
Max F. Brauer, Esq., No. 11306
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
maxbrauer@hoskinslaw.com

*Of Counsel*

Sylvia A. Goldsmith, Esq.
GOLDSMITH & ASSOCIATES, LLC
Park West Building
20545 Center Ridge Road, Suite 120
Rocky River, OH 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
sgoldsmith@sgoldsmithlawoffice.com